Campbell, J.:
Johnson held a mortgage executed by defendant Shepard February 10, 1868, payable in five years, with ten per cent, annual interest. The defendants Woodhouse and Butler guaranteed the collection of the note.
A decree by default was obtained on November 30, 1874, and a sale was made January 17, 1876, to the complainant as purchaser, which was afterwards confirmed. Subsequently defendant Shepard and defendants Woodhouse and Butler filed separate petitions for leave to file bills of review, the former on the ground that the decree included usurious and illegal allowances for interest, apparent on the face of the -commissioner’s report, and the latter because they were only guarantors of collection and not subject to a decree, ^either for absolute payment or at all. The decree was against them as original promisors, and for an absolute liability.
On the 2d of May, 1876, the cause was discontinued as against Woodhouse and Butler..
On the 26th of June, 1876, the excess of interest was remitted against Shepard.
On the first of July, 1876, the court rescinded the order of discontinuance, on an affidavit of complainant’s solicitor, that he did it under a mistake as to the meaning of a previous order, which is not set forth in the record. On the same day an order was entered refusing to allow bills of review, and imposing costs on all the defendants jointly.
So far as Shepard is concerned, the only complaint which he made against the decree was, that it was excessive in amount. *116 We do not find any complaints against the sale, except as to this same defect, and certain supposed irregularities not going to the merits. The petition for a bill of review was filed at a late period, when it was to be governed entirely by equitable considerations, and if the defendant has not been really damnified, the prayer should not be granted.
It was urged on the argument that the record did not show service of subpoena, and therefore the court had no jurisdiction; and it is claimed that on a bill of review all errors are open, whether specified or not.
This, however, is not a bill of review, but a petition for leave to file one, which is a very different thing. Moreover, the defect relied on is not well founded in fact. By a manifest clerical error the sheriff certified that he served a subpoena on a day before it was dated and issued. If a subpoena were required to be served any particular time before the return day, such a return might require amendment. But inasmuch as it may be served on the return day, it is fairly presumable that it was served during its life, and not at an impossible day.
This was subsequently shown to have been the case, and such a slip would have given no *very strong support to an appeal to the discretion of the court.
. We think that the remission of the excess removed the only grievance which Shepard had suffered, and that the court was right in refusing him relief.
The question then arises, whether the other defendants are in the same position with Shepard.
Their obligation, as set forth in the bill, is not an agreement or guazanty of payment, but a guaz-anty of collection, which created no liability against them until- after all the legal resources of complainant had been exhausted. Until not only a decree had been obtained, but it had also failed to pz-oduce payment, either out of the land or out of the other property of Shepard, they wez’e not liable to be called upon for payment. —Barman v. Carhartt, 10 Mich. R., 338.
Under the original equitable jurisdiction there never was any powez: to make a personal deci’ee against even the mortgagor himself. His personal obligation could only be enforced *117 in a suit at law. It was an innovation which, provided that in case there was a deficiency left after exhausting the land, the debt might be collected in the same proceedings. The first Michigan statute authorizing this remedy was the chancery act of April 23, 1833, and was confined strictly to the mortgagor himself. — Sec. 37. Before the revised statutes of New York there was no remedy in equity against any thing but the lands mortgaged, in that state (Dunkley v. Van Buren, 3 J. C. R., 330), and such was the general rule. — Downing v. Palmateer, 1 Mon., 66. The debt could only be collected at law.
The Michigan revised statutes of 1838 prohibited proceeding at law and in equity at the same time, and provided that the personal claim might be pursued against the mortgagor; but in giving this power it was made to act as a supplementary process: “On coming in of the report of sale, the court shall have power to decree and direct the payment by *the mortgagor of any balance of the mortgage debt that may remain unsatisfied after a sale of the premises, in the cases in which such balance is recoverable at law; and for that purpose may issue' the necessary executions as in other cases against other property of the mortgagor.” — R. S. 1838, p. 376, § 105. That system also contained the first provision for holding other debtors: “If the mortgage debt be secured by the obligation or other evidence of debt hereafter executed, of any other person besides the mortgagor, the complainant may make such person a party to the bill, and the court may decree payment of the balance of such debt remaining unsatisfied after the sale of the mortgaged premises, as well against such other person as the mortgagor, and may enforce such decree as in other cases.” — Sec. 107.
Our present statutes on this subject are in all respects the same with those of 1838, and those were borrowed from the laws of New York. The language is unambiguous in requiring the action which shall finally authorize the issue of an execution to be based on the confirmation of a report of deficiency. The proceeding is essentially new and supplementary, and not a mere continuation of the foreclosure. It resembles the proceeding had on the coming due of a new installment, which, *118 although it is usually provided for in the original decree, is nevertheless as distinct a proceeding as a scire facias for further breaches of a bond.— Brown v. Thompson, 29 Mich. R., 72. It was not till 1840, in McCarthy v. Graham, 8 Paige R., 480, that it was settled by any reported decision that a contingent provision for personal liability could be inserted in the original decree. But it is merely contingent. It has never been held that an absolute decree can be rendered béfore the confirmation of the report, so as to operate as a final judgment. The practice in Michigan has generally conformed to the chancellor’s decision in Mc Carthy v. Graham.
The jurisdiction over persons who have become liable on the debt, is not obligatory, but is only permissive. When *justice requires that the party shall have a chance to defend himself at law, or to seek redress in any other form against his liability, courts have refused a personal decree. In North American Fire Tnsurance Company v. Handy, 2 Sanf. Ch., 492, where one of two joint guarantors had been released after suit brought, by a compromise, which, under the statutes, left the co-surety liable for half of the debt, the court refused to grant a personal decree against the one not released, and left complainant to sue at law. So in Withers v. Morrell, 3 Edw. Ch. R., 560, where a decree was granted for the foreclosure of a purchase money mortgage against the land, but the mortgagor claimed a failure of title as to a part of the land, the court, while it held that defense could not be tried in the foreclosure suit, nevertheless refused a personal decree, and left the parties to redress in another' form.
It is also to be remarked that in the present case the decree was an absolute one, and the defendants Woodhouse and Butler were not guarantors of payment, but only of collection. There is no doubt guarantors of payment come within the statute and may be made parties. Their liability, if it exists at all, is complete before suit brought. But it would certainly be an anomaly if parties can be sued and put to the expense of defending themselves before there is any assurance that they will ever become liable. If the joinder in the present and like cases is *119 allowed, the guarantor is charged as a defendant in proceedings which must not only be carried to sale of land and personal judgment against the principal debtor, but where the remedy against him must be completely exhausted before there is any excuse for calling upon the surety. To subject the guarantor of collection to this trouble and expense, when he may never become liable, and when he has not failed in any duty, is unjust. He does not come within the language or the spirit of the statute. These clauses were introduced to remove the necessity and prevent the practice of suing at law for the debt at the same time with the equitable ^foreclosure. The debts for which a personal decree is allowed are those which are “recoverable at law.”
No guaranty of collection is recoverable at law before the exhaustion of the remedies under the personal decree, and the decree cannot provide execution for debts not due.
The case of Leonard v. Morris, 9 Paige R., 90, was cited as supporting such a decree. In that case the distinction was not pointed out between guaranties of collection and guaranties of payment, and the chancellor, assuming, without discussion and without previous reported decisions, that either of them was admissible, was only called on to determine whether the representatives of a guarantor could be brought in. In Baxter v. Smack, 17 How. Pr., 183, it was held that a guarantor of collection should not be pursued until the mortgage was-exhausted; and the case of Vanderkemp v. Shelton, 11 Paige R., 28, indicates the same doctrine. It was held by this court in Barman v. Carhartt, 10 Mich. R., 339, that both legal and equitable remedies must be exhausted before pursuing the guarantor. And in Joy v. The Jackson & Michigan Plank Road Co., 11 Mich. R., 155, we held that collateral guarantors, not agreeing for the payment of the debt, should not be joined as defendants.
As no one can object to the misjoinder of defendants but those misjoined, it might become a serious question whether the court, where no objection is made, might not make a contingent decree against them. But it could not under any circumstances preclude them from a hearing before execution. *120 While the decree may bind the original promisor, yet any thing which the creditor does to change his contract relations may effect or discharge the sureties, and this may happen at any time before their liability is finally settled, if not later. Such a decree as was granted here was entirely erroneous, and we cannot conceive that they are in default in not asking a bill of review, when the proceedings to fix them finally are yet uncommenced. It would be a misuse of discretion to refuse to correct an evil when no one has acted or can act in reliance on it; and this *court on appeal is bound to exercise its own discretion upon the matters brought before it.
The parties have not lost their rights by laches, and we should not hesitate to grant their petition if necessary. But the order refusing it and granting costs against them was based on a preceding order which was unwarranted.
Immediately, or very soon after Woodhouse and Butler applied for leave to file their bill of review, complainant dismissed his bill against them. This was the precise relief they sought, and rendered any further steps in defense needless. The court afterwards allowed the complainant to withdraw this dismissal, and on the same day granted the order in question dismissing the petition. If the court had any power to reinstate them as defendants, it had none to decide a matter which had before that come to an end by the dismissal, without new proceedings. The order was made in the same way as if they had always remained in the case, and as if there had been no dismissal.
But we do not understand how the court could bring in parties absolutely discharged by the complainant’s own act, and hold them bound by the previous decree and proceedings. A non-suit at law -is often set aside, but a non-suit thus vacated leaves the entire case open for hearing. Chancery proceedings may have parties supplied by amendment at all stages, but the new parties can always defend if they choose. Where necessary parties are left out, leave is usually given to bring thém in; but where they are not necessary, and have been left out voluntarily, this is not so. These persons, if allowable, *121 were not necessary parties, and having been once dismissed, could only be brought back by the usual process.
We think the two orders of the first of July should be reversed and vacated, and the bill ordered to stand dismissed against Woodhouse and Butler, with costs of both courts, and the order aflirmed as to Shepard, with costs of this court.
The other justices concurred.